UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Lululemon Securities Litigation

13 Civ. 4596 (KBF)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT DENNIS J. WILSON'S MOTION TO DISMISS
# THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

Michele Hirshman
Audra J. Soloway
Brette Tannenbaum
1285 Avenue of the Americas
New York, New York  10019-6064
Tel.  (212) 373-3000

*Attorneys for Defendant Dennis J. Wilson*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.    With One Exception, Mr. Wilson Did Not "Make" the Challenged Statements and Thus Cannot Be Held Liable for Them Under *Janus*. ........................................ 2

II.   The CAC Fails Adequately to Plead Scienter as to Mr. Wilson. ..................................... 6

    A.    Mr. Wilson's Stock Sales Do Not Establish His Motive and Opportunity to Commit the Alleged Fraud ................................................................... 7

    B.    There Can Be No Inference of Mr. Wilson's Conscious Misbehavior or Recklessness Because The CAC Fails to Establish That He Had Specific Knowledge of Purported Quality Control Issues. ............................................... 11

III.  Plaintiff's Section 20(a) Claim Against Mr. Wilson Fails as a Matter of Law. ............... 12

CONCLUSION ....................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acito* v. *IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995)...................................................................................................10

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
    693 F. Supp. 2d 241 (S.D.N.Y. 2010).................................................................................2

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)............................................................................................3, 12

*City of Pontiac Gen. Ret. Sys.* v. *Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012).................................................................................6

*City of Taylor Gen. Emps. Ret. Sys.* v. *Magna Int'l Inc.*,
    No. 12 Civ. 3553 (NRB), 2013 WL 4505256 (S.D.N.Y. Aug. 23, 2013) ..........................11

*In re CRM Holdings, Ltd. Sec. Litig.*,
    No. 10 Civ. 975 (RPP), 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...............................6

*Edison Fund* v. *Cogent Inv. Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008).................................................................................6

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006)...............................................................................10

*In re Fannie Mae 2008 Sec. Litig.*,
    891 F. Supp. 2d 458 (S.D.N.Y. 2012)..............................................................................2, 5

*Fishbaum* v. *Liz Claiborne, Inc.*,
    No. 98-9396, 1999 WL 568023 (2d Cir. July 27, 1999).....................................................7

*George* v. *China Automotive Sys. Inc.*,
    No. 11 Civ. 7533 (KBF), 2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012).........................8, 9

*In re Gildan Activewear, Inc. Sec. Litig.*,
    636 F. Supp. 2d 261 (S.D.N.Y. 2009).......................................................................7, 9, 10

*Glaser* v. *THE9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)...........................................................................7, 10

*Granata* v. *Berson*,
    No. 11 Civ. 689 (KBF) (KNF), 2011 WL 6034366 (S.D.N.Y. Dec. 5, 2011).....................6

*Ho* v. *Duoyuan Global Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012)..................................................................................5

*In re IAC/InterActiveCorp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007)..................................................................................7

*IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*,
   No. 11 Civ. 4209 (KBF), 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013)..............................13

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)..................................................................................2

*SEC* v. *Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................................5

*Novak* v. *Kasaks*,
   216 F.3d 300 (2d Cir. 2000)............................................................................................3, 12

*In re Optimal U.S. Litig.*,
   837 F. Supp. 2d 244 (S.D.N.Y. 2011)..................................................................................5

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................................................2

*Ross* v. *Lloyds Banking Grp., PLC*,
   Nos. 12-4600-cv(L), 12-729-cv(Con), 2013 WL 5273067 (2d Cir. Sept. 19,
   2013) ...................................................................................................................................12

*Rothman* v. *Gregor*,
   220 F.3d 81 (2d Cir. 2000)..................................................................................................10

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001).............................................................................................9, 11

*Slayton* v. *Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)................................................................................................13

*In re Smith Barney Transfer Agent Litig.*,
   884 F. Supp. 2d 152 (S.D.N.Y. 2012)..................................................................................3

*Szulik* v. *Tagliaferri*,
   No. 12 Civ. 1827 (PKC), 2013 WL 4494684 (S.D.N.Y. Aug. 21, 2013).............................6

*In re UBS AG Sec. Litig.*,
   No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).......................3, 5

**STATUTES**

15 U.S.C. § 78u-4(b)(2) .............................................................................................................6

**OTHER AUTHORITIES**

Rule 10b-5................................................................................................................2, 4, 5

Rule 10b5-1...................................................................................................................7

Defendant Dennis J. Wilson joins in and incorporates by reference the motion to dismiss filed February 18, 2014 by defendants lululemon athletica, inc. ("lululemon" or the "Company") and Christine M. Day (the "Company Motion"), including the supporting memorandum of law and the Declaration of Joseph S. Allerhand (and the exhibits annexed thereto).  The arguments contained therein are dispositive as to all defendants, including Mr. Wilson.  Mr. Wilson respectfully submits this memorandum of law to address additional reasons why the Consolidated Amended Class Action Complaint, dated January 15, 2014 (the "CAC"), fails to state any claims against him.

## PRELIMINARY STATEMENT

The CAC suffers from significant flaws with respect to the claims against Mr. Wilson, in addition to the defects identified in the Company Motion.  Plaintiff concedes that Mr. Wilson last held a management position at lululemon in January 2012, and thus was not an executive of the Company at any point during the putative class period.  Nonetheless, the CAC lumps him together with the Company and its then-CEO, Ms. Day, by attributing statements to him that he simply did not make and for which the CAC contains no indicia of his control or authority.  Likewise, the CAC does not plead with particularity facts demonstrating that Mr. Wilson made any false statements with scienter.  Rather, it relies entirely on conclusory allegations that Mr. Wilson "dipped in and out of daily affairs" that fall short of the specificity required to plead a strong inference that Mr. Wilson was aware of the alleged fraud, much less complicit in it.  For these reasons, as well as those described in the Company Motion, the CAC must be dismissed as to Mr. Wilson.

**ARGUMENT**

I.  **WITH ONE EXCEPTION, MR. WILSON DID NOT "MAKE" THE CHALLENGED STATEMENTS AND THUS CANNOT BE HELD LIABLE FOR THEM UNDER *JANUS*.**

Under the Supreme Court's decision in *Janus Capital Group, Inc.* v. *First Derivative Traders*, Mr. Wilson can be liable under Rule 10b-5 only for alleged misstatements that he has "made." 131 S. Ct. 2296 (2011). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2302. Mr. Wilson is not alleged to have served as an executive officer during the putative class period, nor is he alleged to have had authority or control over the Company's statements in his role as an outside Board member.[1] Indeed, with the exception of the Form 10-K for the fiscal year ended February 3, 2013, filed on March 21, 2013 (the "2012 Form 10-K"),[2] plaintiff does not attribute any of the alleged misstatements in

---

[1]  In *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458 (S.D.N.Y. 2012), the court observed that "[i]n the post-*Janus* world," an executive may be held accountable where he signs the statement, has ultimate authority over it, ratified and approved the company's statement, or where the statement is attributed to him. *Id.* at 473.

[2]  The alleged misstatements in the 2012 Form 10-K largely concern the Company's "longstanding relationships" with vendors and their shared "commitment to quality and ethics," as well as the Company's "core values" to develop "the highest quality products" and produce "innovative and technically-advanced fabrics and [product] features." (CAC ¶¶ 109–110.) As explained in the Company Motion (at 15–16), these statements, at most, amount to inactionable "puffery." *See, e.g., In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 633 (S.D.N.Y. 2005) (statements that a company refused to "compromise its financial integrity," had a "commitment to create earnings opportunities," and that its business strategies would "lead to continued prosperity" constituted "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable" (citing *Lasker* v. *N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996))); *see also Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 272 n.35 (S.D.N.Y. 2010).

Plaintiff also alleges that the 2012 Form 10-K falsely stated that the Company had partnered with an independent testing company, which conducted a battery of fabric tests before each season. (CAC ¶¶ 109-10.) Other than a conclusory assertion that the Company did not

the CAC to Mr. Wilson.[3]  Rather, plaintiff lumps defendants together and alleges that he had "control" over the Company and its various forms of messaging.  (*See, e.g.*, CAC ¶¶ 94, 139.)  Such allegations are insufficient to withstand a motion to dismiss after *Janus*.

          **SEC Filings and Press Releases**  Plaintiff alleges that defendants made false and misleading statements in lululemon's filings with the SEC and press releases issued during the class period.  (*Id.* ¶¶ 98–99.)  But Mr. Wilson neither signed these SEC filings (other than the 2012 Form 10-K) nor issued these press releases, and the alleged false statements are not attributed to him.  As such, he cannot be held liable as a maker of these statements.  *See, e.g., In re UBS AG Sec. Litig.*, No., 07 Civ. 11225(RJS), 2012 WL 4471265, at *9–11 (S.D.N.Y. Sept. 28, 2012) (holding that *Janus* precludes fraud claims against individual defendants who were not alleged to have *made* any actionable misstatement); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) (dismissing fraud claims as to individual defendant with respect to SEC filings that the individual had not signed).

---

    conduct this testing, the CAC does not plead facts showing that this statement was false or that Mr. Wilson (or any other defendant) knew it to be false when made.  The CAC thus fails to plead fraud with particularity with respect to that statement.  *See ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (citing *Novak* v. *Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000))).  Likewise, the CAC does not plead any facts demonstrating a strong inference that Mr. Wilson acted with fraudulent intent in making this statement in the 2012 Form 10-K.  (*See infra* Part II.)

[3]    The CAC identifies two other statements by Mr. Wilson: *first*, a statement to *Fortune* magazine in August 2013 concerning the pace of growth (CAC ¶ 35); and, *second,* a statement in a November 2013 *Bloomberg* interview in which Mr. Wilson purportedly blamed quality control issues on the body shape of the products' wearers (*Id.* ¶ 77).  Plaintiff, however, does not assert Section 10(b) claims premised on either of these statements, leaving the 2012 Form 10-K as the only alleged false statement attributed to Mr. Wilson.

3

Not only are the alleged misstatements not attributed to Mr. Wilson, but plaintiff also does not allege that Mr. Wilson drafted, reviewed, or otherwise took responsibility for the content or delivery of the allegedly false SEC filings and press releases.  To the contrary, the CAC concedes that Mr. Wilson last served as an executive at the Company in January 2012 (CAC ¶ 17)—eight months before the class period even begins in September 2012.  And the CAC does not allege facts showing that, in his role as Chair of the Board of Directors, Mr. Wilson had ultimate authority over SEC filings and press releases, including their content and whether and how to communicate with the public.

Accordingly, Mr. Wilson cannot be deemed the "maker" of the allegedly misleading statements contained in the Company's SEC filings and press releases, with the exception of the 2012 Form 10-K that he and others signed.

**Company Website**   Plaintiff further alleges that defendants made a series of materially misleading statements regarding the "purportedly exceptional quality" of lululemon's products on the Company's website.  (*Id.* ¶ 95.)  Unable to marshal any facts establishing Mr. Wilson's responsibility for these statements, plaintiff alleges simply that he "at all times had control over the statements on Lululemon's website" without identifying a single factual allegation in support of that assertion.  (*Id.* ¶ 94.)  In fact, the CAC attributes the alleged website misstatements to "the Company," without elaboration as to who drafted, prepared, reviewed, or otherwise controlled their content.  (*See, e.g.*, *id.* ¶¶ 95, 107.)  Such conclusory allegations are insufficient to establish that Wilson "made" the statements posted on the Company's website.  *See Janus*, 131 S.Ct. at 2305 (rejecting argument that defendant "might have 'made' the misleading statements within the meaning of Rule 10b-5" notwithstanding allegation that defendant was "significantly involved" in preparing the documents at issue).

4

**Investor Calls** Finally, the CAC alleges that defendants made a number of allegedly misleading statements on conference calls with lululemon's investors. (*Id.* ¶ 96–97, 101, 111, 120–121.) Mr. Wilson is not alleged to have participated in any of these conference calls, let alone to have delivered the alleged misleading statements. In fact, each of the specific misstatements made during these conference calls are attributed in the CAC to Christine Day, then the CEO of the Company, and the CAC does not plead that Mr. Wilson had any control over their content. *See Janus*, 131 S. Ct. at 2302 ("[I]n the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed."); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d at 473 (attributing statement on conference call to the speaker because "[o]ne 'makes' a statement by stating it" under *Janus*).

For these reasons, with the exception of the claims premised on the 2012 Form 10-K, all claims against Mr. Wilson must be dismissed under *Janus*.[4]

---

[4] Plaintiff does not allege in the CAC that it is relying on the group pleading doctrine to meet its pleading burden as to Mr. Wilson. Even if plaintiff were to invoke this doctrine, however, a majority of the courts in this district that have considered the question have held that *Janus* precludes plaintiffs from relying on the group pleading doctrine, and instead requires that they plead facts specifically attributing company-issued statements to individuals. *See, e.g., In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *9–10 ("[W]hile it is true that *Janus* might not alter the well-established rule that a corporation can act only through its employees and agents, it is nonetheless also true that a theory of liability premised on treating corporate insiders as a group cannot survive a plain reading of the *Janus* decision.") (internal citations and quotation marks omitted); *Ho* v. *Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 572 n.13 (S.D.N.Y. 2012) (GBD) (noting that holding an individual defendant liable for failing to correct another individual's allegedly false statements would "be in tension with [*Janus*]" because *Janus* holds only that the person who "makes" the misstatement is liable, and "implies that each party is only liable for their own omissions as well"); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 262–63 (S.D.N.Y. 2011) (SAS) (setting forth rationales indicating that *Janus* bars the group pleading doctrine in federal securities actions while preserving the doctrine in common law fraud actions); *SEC* v. *Kelly*, 817 F. Supp. 2d 340, 342–43 (S.D.N.Y. 2011) (CM) ("[T]he SEC concedes that *Janus* forecloses a misstatement claim against [certain individual defendants] under subsection (b) of Rule 10b-5, because

5

## II. THE CAC FAILS ADEQUATELY TO PLEAD SCIENTER AS TO MR. WILSON.

Not only must plaintiff plead that Mr. Wilson actually "made" the alleged false statements,[5] plaintiff also must plead facts giving rise to a strong inference that Mr. Wilson made those misstatements with intent to defraud. (*See* Company Motion, at 16–17 (describing the requirements for pleading a strong inference of scienter under *Tellabs*).) Where, as here, plaintiff cannot plead facts demonstrating that an individual defendant acted with intent to deceive, the fraud claims must be dismissed. *See Szulik* v. *Tagliaferri*, No. 12 Civ. 1827 (PKC), 2013 WL 4494684, at *1, *16 (S.D.N.Y. Aug. 21, 2013) ("The facts alleged must address the scienter of each individual defendant."); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975 (RPP), 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012) (requiring plaintiff to "allege facts that adequately address the scienter element with respect to each of the Individual Defendants—an element that cannot be satisfied through group pleading"); *Edison Fund* v. *Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 228 (S.D.N.Y. 2008) (a complaint "must state with particularity facts giving rise to a strong inference that each defendant acted with scienter") (internal quotation marks omitted); *see also* 15 U.S.C. § 78u-4(b)(2) (in pleading scienter "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with

---

neither defendant 'made' a misleading statement under the new *Janus* standard."). *But see City of Pontiac Gen. Ret. Sys.* v. *Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374–75 (S.D.N.Y. 2012) (JSR) (concluding that it was appropriate to invoke group pleading doctrine where complaint alleged specific instances through which information was given to executive vice president, including that division leaders had told her personally that projections in company's 10-Q were unattainable, and thus adequately alleged that executive vice president knew specific statements contained in 10-Q were false when made).

[5] As this Court previously has observed, the absence of statements attributable to an individual defendant also is fatal to any attempt to plead scienter as to that individual defendant. *Granata* v. *Berson*, No. 11 Civ. 689 (KBF) (KNF), 2011 WL 6034366, at *4 (S.D.N.Y. Dec. 5, 2011) ("Lacking any statements attributable to Miller or TCC, Plaintiff cannot allege any facts amounting to scienter by Miller or TCC. That, too, is fatal to Plaintiff's claims against them.").

particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind.") (emphasis added).

> **A.  Mr. Wilson's Stock Sales Do Not Establish His Motive and Opportunity to Commit the Alleged Fraud.**

Plaintiff relies almost exclusively on allegations that Mr. Wilson's "suspicious" sales of lululemon stock during the class period demonstrate his motive and opportunity to commit fraud. (CAC ¶¶ 87–91, 141.) This argument fails for two reasons.

*First,* Mr. Wilson's trading was conducted pursuant to a trading plan entered into on December 12, 2012 under Rule 10b5-1 of the Securities Exchange Act of 1934 (the "Trading Plan"), pursuant to which Mr. Wilson conferred to his brokerage firm, Merrill Lynch, the discretion to sell Mr. Wilson's shares within limits and according to trading parameters that he established *in advance* and in writing for those sales.[6] (Tannenbaum Decl. ¶ 2 & Ex. 1, at 1, Annex at 1.) Under the Trading Plan, Merrill Lynch alone made decisions about when and how to sell Mr. Wilson's lululemon stock. (Tannenbaum Decl. ¶¶ 3–4 & Ex. 1, at 4.) It is well-established that stock sales made pursuant to a Rule 10b5-1 trading plan do not raise a strong inference of scienter. *See Fishbaum* v. *Liz Claiborne, Inc.*, No. 98-9396, 1999 WL 568023, at *4 (2d Cir. July 27, 1999).[7]

---

[6]  Plaintiff alleges that the Trading Plan "does not limit [Mr. Wilson's] discretion regarding the size of his trades, with the exception of providing a ceiling on the total amount of sales permitted under the plan." (CAC ¶ 89.) To the contrary, the Trading Plan vastly limits Mr. Wilson's discretion. By its terms, the Trading Plan allocates to a brokerage firm, Merrill Lynch, the discretion to trade on Mr. Wilson's behalf between January 10, 2013 and June 30, 2014, and to determine the size of those trades and the timing of those trades, subject to certain predetermined guidelines. (Tannenbaum Decl. ¶ 2 & Ex. 1.)

[7]  *Glaser* v. *THE9, Ltd.*, 772 F. Supp. 2d 573, 592 & n.14 (S.D.N.Y. 2011); *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007).

Plaintiff alleges that, because Mr. Wilson entered into the Trading Plan several months after the putative class period began, it already "was evident to Lululemon's senior executives that the Company had significant product quality issues." (CAC ¶ 88.) Plaintiff thus seeks to invoke the exception to the 10b5-1 plan defense, applicable where an insider enters into a 10b5-1 trading plan *during* the class period. *George* v. *China Automotive Sys. Inc.,* No. 11 Civ. 7533 (KBF), 2012 WL 3205062, at *9 (S.D.N.Y. Aug. 8, 2012) (explaining that "where . . . 10b5-1 trading plans are entered into during the class period, they 'are not a cognizable defense to scienter allegations on a motion to dismiss'" (quoting *Freudenberg* v. *E*Trade Fin'l Corp.*, 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010))).

On the pleaded facts of this case, however, plaintiff's invocation of this exception falls flat. There are no factual allegations in the CAC suggesting that Mr. Wilson had *any* non-public information about any particular product quality problem during the period from September 2012 (when the putative class period commences) and December 2012 (when the Trading Plan was executed). With respect to the black Luon sheerness issue at the heart of plaintiff's claims, the CAC does not offer any allegations at all about when the Board became aware of that issue, and, even with respect to senior management, pleads that they did not become aware of the issue until February or March 2013—months after Mr. Wilson executed his Trading Plan.[8] (CAC ¶ 50.) Moreover, in the original complaint, the putative class period did not commence until March 2013, and it appears that plaintiff extended the putative class period for the very purpose of including the date on which Mr. Wilson entered into the Trading Plan. *Compare* Compl. ¶ 1, ECF no. 1 (proposing class period beginning on March 21, 2013), *with*

---

8   The CAC also alleges that "the Company" was "notified of the 'extent' of the black Luon sheerness problem by store managers on March 11, 2013." (CAC ¶ 105.) Again, this allegation does not specify when or how Board members generally—or Wilson individually—were notified.

Consolidated Class Action Compl. at 1, ECF no. 28 (proposing class period beginning on September 7, 2012). Plaintiff cannot shoehorn a claim against Mr. Wilson through artful pleading of the putative class period. Rather, plaintiff must identify specific facts supporting a strong inference that Mr. Wilson was somehow motivated to make the alleged misstatements that form the basis of their claims. This plaintiff has failed to do. The Court should take into account that all of Mr. Wilson's trading was conducted through, and in accordance with, the Trading Plan, and reject the inference of scienter that plaintiff asks it to draw.

*Second,* Mr. Wilson's stock sales do not give rise to a strong inference of scienter because they are not suspicious in timing or quantity. The "mere fact that insider stock sales occurred" during the putative class period does not suffice to establish motive. *In re Gildan Activewear*, 636 F. Supp. 2d at 270. Even in the absence of the 10b5-1 trading plan defense, courts must consider whether an individual defendant's trading was "unusual" in "the amount of profit from the sales, the portions of stockholdings sold, the change in volume of insider sales, and the number of insiders selling." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74–75 (2d Cir. 2001); *see George*, 2012 WL 3205062, at *10.

The timing and amount of the specific stock sales by Mr. Wilson during the putative class period were neither unusual nor suspicious. It is undisputed that the total sales at issue constituted a small percentage of Mr. Wilson's lululemon holdings. Mr. Wilson started the putative class period with 42,554,199 shares and ended it with 40,214,410 shares, thus retaining over 94% of his pre-Class Period holdings.[9] (Tannenbaum Decl. Ex. 2, Entries 120, 146.) Mr. Wilson's broker under the Trading Plan, Merrill Lynch, sold only 2.3 million of Mr. Wilson's

---

[9] Of the 2,341,500 shares disposed of during the putative class period, 41,500 reflect gifts that Mr. Wilson made to charitable entities for philanthropic purposes. (Tannenbaum Decl. Ex. 2, Entries 121, 143.)

shares during the putative class period—*i.e.*, 5.40% of his total shares owned.  (CAC ¶ 91.)[10] The Second Circuit and this Court consistently have found much larger sale percentages not to be suspicious.  *See, e.g.*, *Rothman* v. *Gregor*, 220 F.3d 81, 94 (2d Cir. 2000) (9.9%); *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (11%); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 291–92 (S.D.N.Y. 2006) (17.4% and 10.9%).

        Moreover, the timing of these stock sales is not suspicious.  Mr. Wilson's sale of 5.40% of his total holdings was in line with his historical trading practice:  Mr. Wilson sold 4.85% of his shares in 2010, 4.32% in 2011, and 3.92% in 2012.  (Tannenbaum Decl. Ex. 4.)[11] *See In re Gildan Activewear*, 636 F. Supp. 2d at 270 ("Insider stock sales are unusual where the trading was in amounts dramatically out of line with prior trading practices.") (internal quotation marks omitted).  Additionally, there is a disconnect between plaintiff's principal fraud theory, concerning the black Luon sheerness issue, and its stock sale scienter theory.  The CAC pleads that the Company issued the first alleged corrective disclosure of the black Luon sheerness issue on March 18, 2013, which caused the stock price to decline 6.4% to $64.08 per share on March 19, 2013.  (CAC ¶ 105.)  But plaintiff concedes that Merrill Lynch sold only 300,000 of Mr. Wilson's shares before the March 18 announcement that allegedly caused the stock price to drop—and even these sales predated the negative announcement by several months.  (CAC ¶ 91; Tannenbaum Decl. Ex. 3, Entries 2–7.)  By contrast, Merrill Lynch sold 2 million shares (or

---

[10]  Plaintiff understates Mr. Wilson's holdings by failing to include 10,328,858 shares held by Mr. Wilson though LIPO Investments (USA) Inc. ("LIPO").  Specifically, Mr. Wilson held 5,164,429 shares through LIPO at the start of 2010 that doubled on July 11, 2011 as a result of a two-for-one stock split.  (Tannenbaum Decl. Ex. 5, at 14 (Form 4 filed Aug. 9, 2010), 83–84 (Form 4 filed Oct. 5, 2011).)  Thus, he sold approximately 5.40% of his stock during the Class Period, not 7% as alleged in the CAC.  (Tannenbaum Decl. Ex. 4.)

[11]  "When a complaint alleges only 'incomplete information' concerning insider sales, the court is 'free to consider' defendants' SEC filings to fill gaps on motion to dismiss."  *Glaser*, 772 F. Supp. 2d at 587 (citations omitted).

87.0% of Mr. Wilson's alleged Class Period sales) *after* the black Luon sheerness issue was announced and *after* the stock price had declined.  (CAC ¶ 91; Tannenbaum Decl. Ex. 3, Entries 8–18.)  Such facts do not logically support an inference of scienter; indeed, they support the opposite inference.  *See City of Taylor Gen. Emps. Ret. Sys.* v. *Magna Int'l Inc.*, No. 12 Civ. 3553 (NRB), 2013 WL 4505256, at *24 (S.D.N.Y. Aug. 23, 2013) (stock sales are unusual only when made "at times calculated to maximize the personal benefit from undisclosed inside information" (quoting *SEC* v. *Rorech*, 720 F. Supp. 2d 367, 414 (S.D.N.Y. 2010))); *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 74 ("Unusual insider sales at the time of the alleged withholding of negative corporate news may permit an inference of bad faith and scienter.") (internal quotation marks omitted).[12]

### B.  There Can Be No Inference of Mr. Wilson's Conscious Misbehavior or Recklessness Because The CAC Fails to Establish That He Had Specific Knowledge of Purported Quality Control Issues.

Plaintiff also attempts to plead Mr. Wilson's scienter for purported misstatements through conclusory allegations, attributed to two "confidential witnesses," that he "dipped in and out of daily affairs" and "his fingerprints are all over the company's policies and principles." (¶¶ 46, 138–39.)  Such allegations are woefully inadequate to support a strong inference of fraudulent intent.  The CAC does not contain a single particularized factual allegation showing

---

[12]  Mr. Wilson's trading from mid-May to early June 2013—including his sale on June 7 (CAC ¶ 89)—is explained by the express terms of the Trading Plan itself, rather than any fraudulent purpose. (See Tannenbaum Decl. ¶¶ 2–3.)  Further, contrary to plaintiff's allegations, there is nothing suspicious about the June 2013 stock sales as they relate to Ms. Day's resignation.  By plaintiff's own pleading, Ms. Day told the Board of Directors that she was stepping down as CEO on June 7, 2013, and this information was announced on June 10, 2013.  (CAC ¶ 89.)  There is no suggestion in the CAC that, when Mr. Wilson executed the Trading Plan in December 2012, he could have anticipated Ms. Day's sudden resignation in June 2013.

that Mr. Wilson was directly involved in the Company's allegedly deficient quality control procedures, much less that he was involved in formulating any public disclosures concerning those procedures. In fact, CW 2 and CW 5, respectively a Vice President of Product Operational Solutions and a Lead Raw Material Developer, are not even alleged to have had any direct contact with Mr. Wilson. (¶ 34.) Such allegations are plainly insufficient. *Novak*, 216 F.3d at 314 (explaining that allegations based on confidential witnesses must be made "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged").

In the absence of particularized factual allegations, the CAC falls back on unsupported assertions that Mr. Wilson *must have known* about the alleged fraudulent misrepresentations because he made certain public statements about lululemon's products and "core values" generally. (¶¶ 35, 77.) This form of *ipse dixit* pleading is routinely rejected as insufficient to support a strong inference of scienter. *See ATSI Commc'ns,* 493 F.3d at 99 (securities fraud complaint must explain why statements are fraudulent in nonconclusory allegations supported by fact); *see also* Company Motion at 22–23 (collecting cases).

Because the CAC fails to allege particularized facts establishing either Wilson's motive and opportunity or his conscious misbehavior or recklessness with respect to the alleged fraud, it does not adequately plead scienter as to Mr. Wilson.

### III.  PLAINTIFF'S SECTION 20(A) CLAIM AGAINST MR. WILSON FAILS AS A MATTER OF LAW.

To establish a prima facie case of control person liability under section 20(a) of the Securities Exchange Act, plaintiff must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Ross* v. *Lloyds*

*Banking Grp., PLC*, Nos. 12-4600-cv(L), 12-729-cv(Con), 2013 WL 5273067, at *5 (2d Cir. Sept. 19, 2013) (quoting *ATSI Commc'ns*, 493 F.3d at 108).  For the reasons discussed above and in the Company Motion, plaintiff has failed to allege a primary violation of § 10(b) and therefore the § 20(a) claim fails as a matter of law.  *See Slayton* v. *Am. Express Co.*, 604 F.3d 758, 778 (2d Cir. 2010).  Moreover, the CAC is bereft of any facts establishing that Mr. Wilson was a direct or "culpable participant" in the alleged fraud, and thus plaintiff's § 20(a) claim must fail as against Mr. Wilson.  *See IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*, No. 11 Civ. 4209 (KBF), 2013 WL 1223844, at *13 (S.D.N.Y. Mar. 27, 2013) ("[P]laintiffs must allege sufficient plausible facts of a controlling person's misbehavior or recklessness.").

## CONCLUSION

For the reasons set forth above and in the Company Motion, the claims against Mr. Wilson should be dismissed with prejudice.

Dated: New York, New York
February 18, 2014

> Respectfully submitted,
>
> PAUL, WEISS, RIFKIND, WHARTON
> & GARRISON LLP
>
> By:     /s/ Audra J. Soloway
> Michele Hirshman (mhirshman@paulweiss.com)
> Audra J. Soloway (asoloway@paulweiss.com)
> Brette Tannenbaum (btannenbaum@paulweiss.com)
>
> 1285 Avenue of the Americas
> New York, New York  10019-6064
> Tel.  (212) 373-3000
>
> *Attorneys for Defendant Dennis J. Wilson*

CHOATE HALL & STEWART LLP

Michael T. Gass
Stuart M. Glass

Two International Place
Boston, Massachusetts  02110
Tel.  (617) 248-5000

*Of Counsel*